461 P.2d 484

In the Matter of the ESTATE of Union P. THOMAS, Deceased.

GRAND CANYON COLLEGE, beneficiary and real party in interest under the Last Will and Testament of Union P. Thomas, Deceased, Appellant,

v.

Gage GOMS, Special Administrator of the Estate of Union P. Thomas, Deceased, Appellee.

No. 9677.

Supreme Court of Arizona.

In Banc.

Dec. 1, 1969.

Milburn N. Cooper, Phoenix, for appellant.

Lewis, Roca, Beauchamp & Linton, by Charles Crehore, James Moeller & Charles F. Wilkinson, Phoenix for appellee.

HAYS, Justice.

The decedent, Union P. Thomas, on September 9, 1963, executed a will leaving the whole of his estate to Grand Canyon College. Thereafter on April 24, 1964, his cousin, Gage Goms filed a petition for a letter of guardianship which issued May 7, 1964. Thomas died on October 1, 1965. Prior to his death, Thomas executed a purported revocation of will dated February 20, 1965. Out of these circumstances arose the controversy between Grand Canyon College and the heirs at law.

Gage Goms who had been appointed guardian for the decedent, filed a petition for letters of general administration on October 22, 1965, alleging that Thomas died intestate. On October 14 of the following year Grand Canyon College filed its petition for probate of the September 9, 1963, will. Grand Canyon College resisted the petition for letters of administration and sought to have the petition for probate of the will determined first. The court ordered the matter to trial on the question of the validity of the 1965 will revocation.

At the hearing the testimony of the two persons who witnessed the purported revocation was presented. Both indicated that in their opinion the decedent was competent at the time it was executed.

Testimony to that effect also was adduced from Mr. Eaglesfield, a friend of the decedent, who had brought him to the social event where the purported revocation was executed and who had previously given him the prepared revocation. Eaglesfield also testified that the decedent asked him to get the revocation document prepared, and that he did so through Appellee Goms.

Appellant produced a number of witnesses who testified that in his declining years decedent became forgetful, unclean and unkempt, and changed in his habits and attitudes. Testimony of specific acts of unusual conduct near the time of the execution of the revocation was elicited. These witnesses also expressed an opinion that the decedent was not competent.

The Court, after a hearing without a jury, made findings of fact and conclusions of law which sustained the validity of the revocation.

The appellant has presented twelve (12) questions for consideration on appeal but we find these can be condensed into the following issues:

1. Did the court commit reversible error or abuse its discretion by first determining the validity of the 1965 revocation rather than by proceeding with a hearing on the probate of the 1963 will?

2. Does a document purporting to revoke a will have to have an attestation clause, and does its execution at a social occasion affect its validity?

3. Was the trial court clearly erroneous in finding as a fact that Thomas had testamentary capacity on February 20, 1965?

4. Was the issue of undue influence properly before the court so that the court was required to make an express finding thereon? If so, does the record reflect undue influence by Goms on the decedent?

The appellant vigorously contends that the issues should have been resolved in a hearing on the probate of the 1963 will, rather than in a hearing to determine the validity of the 1965 revocation, and hence questions the propriety of issuing letters of administration to Goms or his designee. Leiby v. Superior Court, 101 Ariz. 517, 421 P.2d 874 (1966), and In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732 (1949), are cited in support of the proposition that probate procedure is a creature of statute and therefore strictly regulated by statute. With this proposition we agree, but fail to see its application here. The statutes are silent as to how the court should proceed when first a petition for letters of administration is filed and then a petition for probate of a will is filed in the matter of the same estate.

■ Obviously this problem was in mind when Rule X(c), Maricopa Rules of Practice, 17 A.R.S., was written. The rule provides:

"Whenever it appears that there are two or more petitions relating to the estate of the same decedent * * *, all of such petitions shall be heard with the petition bearing the lowest file number."

The foregoing rule was followed by the trial court. We find no violation of the probate code, nor an abuse of discretion in the court's handling the matter as it did. Logic and common sense dictate that the starting point be with the most recent document purportedly executed by the decedent. Ebling v. Hardesty, 354 S.W.2d 348 (Mo. App.1962). See also In re Ketellappers Will, 81 N.Y.S.2d 287 (Surr.Ct.1948).

■ With regard to appellant's second point, we need only refer to two sections of the statutes. A.R.S. § 14–126, subsec. 1 provides that a will may be revoked by a "declaration in writing executed with the same formalities as the will revoked." The formalities as to the making of a will are found in A.R.S. § 14–121:

"Except as otherwise provided by law, every will shall be in writing and signed by the testator, or by some other person by his direction and in his presence, and

shall, if not wholly written by the testator, be attested by two or more credible witnesses who are fourteen or more years old, subscribing their names thereto in the presence of the testator."

The evidence at the trial indicates that the decedent signed the revocation in the presence of two adult witnesses who also signed the document; all signed in the presence of each other. This took care of the statutory formalities.

■ Appellant talks about an attestation clause being required and questions the place of execution. We see no merit to these propositions, for we find nothing regarding them in the statutes, nor are authorities cited to support its position.

■ The third issue raised requires an examination of the testimony at the trial. In order for appellant to prevail it must appear that the court, sitting as the trier of fact, was clearly erroneous in finding that the decedent had testamentary capacity on February 20, 1965, the date of the purported revocation. There is a presumption of testamentary capacity which must be rebutted. In re Walters Estate, 77 Ariz. 122, 267 P.2d 896 (1954).

■ Appellant contends however that the fact that the decedent was adjudged incompetent under the guardianship statute prior to his execution of the purported revocation overcame the presumption of testamentary capacity. An adjudication of incompetency under the guardianship statute does not of necessity indicate a lack of mental capacity to execute a will. A person under guardianship may still perform a valid testamentary act. See 89 A.L.R.2d 1120 (1963), and McMahon v. McCulloch, et al., 81 Cal.App.2d 480, 184 P.2d 319 (1947).

■ Although there is a conflict in the evidence as to the competency of the decedent at various times in his later years, we are here concerned only with evidence reflecting on his capacity at the time of the execution of the purported revocation. There is an abundance of evidence to support the trial court's finding that the decedent knew and understood the nature of his act; knew and understood the nature and extent of his property; and knew the objects of his bounty. Aberrant behavior by decedent around the crucial time involved, does not alone demonstrate incompetency. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963). We hold that the trial court's findings are supported by evidence, and hence are not clearly erroneous.

■ The final issue concerns the failure of the trial court to make findings relative to undue influence. A reading of the pleadings and reporter's transcript leaves a question as to whether or not appellant actually raised the question of undue influence in the litigation. There is no reference to undue influence in its pleadings, and at the conclusion of the case prior to closing arguments, appellant's counsel asked leave to amend the pleadings to conform to the evidence if the issue was not there. (Reporter's transcript at 530).

To meet the undue influence issue head-on, without resorting to a technical failure of pleading, we find that there is not sufficient evidence of undue influence to warrant a reversal. The Appellee Goms, although he participated in the preparation of the revocation, was not present when the document was executed, did not select the witnesses and did not himself transmit the revocation to the decedent. Although Goms is a beneficiary of the intestate estate, he is one of several. There is no evidence to rebut that presented by appellee which indicates that the idea of revocation originated with the decedent himself. See In re Estate of Harber, 102 Ariz. 285, 428 P.2d 662 (1967).

The judgment of the trial court is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.