483 P.2d 603

In the Matter of the ESTATE of Marvin Smith TEEL, Deceased.

Frank TEEL, Appellant,

v.

Ruth ROBERSON, Appellee.

No. I CA–CIV 1488.

Court of Appeals of Arizona, Division 1.

April 5, 1971.

Rehearing Denied May 12, 1971.

Review Denied June 22, 1971.

Duecy, Moore, Petsch & Robinson by Lewis B. Moore, Jr., Scottsdale, Cox & Cox by Alfred S. Cox and L. J. Cox., Jr., Phoenix, for appellant.

Moore & Moore by Robert C. Moore, Phoenix, for appellee.

HATHAWAY, Judge.

This appeal arises out of a will contest that was tried to the court sitting without a jury. The appellant, Frank Teel, brother of decedent and contestant below, appeals from the findings of fact, conclusions of law and judgment entered on March 3, 1970, in the superior court in Maricopa County, in favor of the proponent, Ruth

Roberson. The decedent, Marvin Teel, died at the age of 77, on January 5, 1969. He left a will executed on July 6, 1945, bequeathing his entire estate to Ruth Roberson, a half-cousin by marriage and naming her as executrix.

## QUESTION PRESENTED FOR REVIEW

Is a person functioning at the level of a ten to twelve year old child competent to make a will under the law of Arizona? The question is prompted from the finding of fact that the decedent, "Marvin Teel was mentally retarded. He functioned at an age level of ten to twelve years old." The finding of fact further provided:

"1. He could drive a car. He could do simple manual tasks. He could assume responsibility for running errands for his family and friends, care of flower gardens and assume the responsibility for driving ladies to and from church meetings and high school students to and from school on a regular basis for sustained periods of time.

2. On July 6, 1945, Marvin Teel executed a will prepared at his own request by an attorney and executed in accordance with the requirements of law.

3. Marvin Teel did not get along well with his brother Frank Teel and there existed a poor relationship between the two over a period of many years. In 1945 Marvin Teel had a fear that his brother was going to take his property or money.

4. Marvin Teel had a close relationship with Ruth Roberson and her family, beginning in 1929 and lasting at least until 1946. Many visits were exchanged, many gifts were exchanged, many favors and much help was given one to another. A meaningful relationship existed. Ruth Roberson helped Marvin Teel's mother in her last years and her last illness. Marvin Teel's mother died at the age of 88 on August 13, 1945.

5. Marvin Teel was perhaps over-protected by his family and over-dependent upon them. He probably did not develop his potential to function more nearly as a normal person even within the limits of his mental retardation.

6. The death of Marvin Teel's mother was a traumatic and distressing experience for him. She represented someone who for 54 years had protected him and had been someone whom he could trust. Marvin Teel's mental condition began to deteriorate significantly after her death.

7. Marvin Teel did, with good reason, want to give his property to Ruth Roberson and have her act as executrix of his will. He did not tell Ruth Roberson of his will; she did not discover the existence of the will until November, 1968.

8. Marvin Teel did on July 6, 1945, have sufficient mental capacity to give his property to Ruth Roberson. He was aware of those who had some claim to benefit from his property. Marvin Teel comprehended generally the kind and nature of his property. He understood the nature and effect of his testamentary act. Finally, he could make disposition of his property according to a plan formed in his mind.

9. There was no evidence of any undue influence on Marvin Teel at the time of the execution of the will.

10. The result of sustaining the will seems just to the Court and a natural disposition of decedent's property.

And based upon the foregoing findings of fact the Court makes the following * * *."

The court admitted the will to probate on the strength of the foregoing findings of facts, dismissed the petition contesting the

probate and ordered that letters testamentary issue in favor of Ruth Roberson.

In finding of fact number 8, the court found that the testator was competent, viz, he understood the natural objects of his bounty; the kind and character of his property; and the nature of the testamentary act. In re O'Connor's Estate, 74 Ariz. 248, 246 P.2d 1063 (1952); In re Estate of Slater, 6 Ariz.App. 486, 433 P.2d 666 (1967); In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963).

█ Considering the record and the overall findings, we are of the opinion that the conclusion that the decedent "functioned at an age level of ten to twelve years old" is not necessarily inconsistent with the finding of competency as a testator.

"To make a valid will one must be of sound mind though he need not possess superior or even average mentality." Atkinson on Wills, p. 232.

"The fact that advanced years are accompanied by mental sluggishness, impairment of memory, childishness, eccentricities and physical infirmity does not show lack of testamentary capacity." Atkinson on Wills, p. 250.

"Testamentary capacity is not the same as the ability to transact ordinary business * * * Testamentary capacity is determined objectively from the standpoint of the purpose to be accomplished. A testator, at the time of executing his will, must have sufficient mental capacity to know the natural objects of his bounty, to comprehend the kind and character of his property, to understand the nature and effect of his act, and to make a disposition of his property according to some plan formed in his mind." 57 Am.Jur. Wills § 64 at p. 81.

The record would indicate that the decedent led a very sheltered life, but that his understanding was such that his competency as a testator was established. There was evidence that at one time he carried on a small scale dairy business, including the milking of the cows, processing and separating of the milk, and sale to a dairy of his products. The decedent apparently had very few close friends, but the testimony indicates that he was active as a gardener and worked well with his hands. He was very regular in church affairs and according to his minister made and kept pledges to the church. At least on one occasion at Christmas, he donned a Santa Claus suit and distributed gifts by reading the names on the packages and making the distribution accordingly. He read the newspaper and Sears Roebuck catalog and ordered items from the catalog on occasion. He exchanged gifts and greeting cards. The decedent owned and drove his own automobile and was reportedly a very good driver. He was able to transact business at the grocery store, such as purchasing groceries, and he arranged for the maintenance and repair of his automobile and paid for those services.

█ Appellant also attempts to infer that decedent did not have the capacity to make a will by pointing out that decedent was declared incompetent and had a guardian appointed for him 10 months after he executed the will. Testator's capacity to make a will will be judged at the time of the execution of the will. In re Stitt's Estate, supra. Even if testator had been declared incompetent and had a guardian appointed to him at the time of the will's execution, this does not necessarily preclude testator from having the required mental capacity to execute a valid will. See In re Thomas' Estate, 105 Ariz. 186, 461 P.2d 484 (1969).

The evidence shows that the decedent was very close to the beneficiary named under the will and that she thought highly of him and helped care for him. He did not get along well with his brother, the contestant.

The judgment is affirmed.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.