969 P.2d 173

**REPUBLIC INSURANCE COMPANY, a Delaware corporation, Plaintiff–Appellant,**

**v.**

**Robert Michael FEIDLER and Jane Doe Feidler, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 97–0047.**

Court of Appeals of Arizona, Division 1, Department C.

March 3, 1998.

Review Granted Nov. 17, 1998.

Review Denied Feb. 12, 1999.

Law Offices of Joseph C. Dolan, P.C. by Joseph C. Dolan and Charles M. Callahan, Phoenix, for Plaintiff–Appellant.

Susemihl & Davis, P.C. by Terry A. Davis, and Hofmann, Salcito & Stevens by Leroy W. Hofmann, Phoenix, for Defendants–Appellees,

OPINION

GARBARINO, Presiding Judge.

¶ 1 Republic Insurance Company (Republic) brought a declaratory judgment action against Robert Michael Feidler (Feidler) to determine whether the intentional acts exclusion of a homeowners insurance policy denied him coverage for his injuries. The jury decided that when Thomas Davis (Davis) repeatedly stabbed Feidler, he did not possess sufficient mental capacity to form the intent to injure Feidler; therefore, the intentional acts exclusion of Davis's homeowners insurance policy did not apply. Republic challenges the verdict and the resulting judgment claiming, among other things, that several jury instructions were erroneous and that the evidence was insufficient to support the verdict. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶ 2 On November 12, 1988, Davis and three of his friends went to a party at an apartment complex in Tempe. Prior to the party, Davis drank at least six beers[1] and shared a couple of marijuana "joints." Davis also believes he consumed approximately one quart of tequila at the party.

¶ 3 When they left the party, Davis and his friends went to Davis's truck, which was parked nearby. Feeling sick, Davis left his friends asleep in his truck and walked behind some garbage bins. When he tried to return to his truck, he could not locate it.

¶ 4 While searching for his truck, Davis approached Feidler and his cousin, Patrick Foley (Foley), and asked them to assist him. When they refused, Davis and Foley got into a wrestling match. After separating them,

Feidler walked Davis a short distance away from Foley. As Feidler was returning to Foley, Davis charged Feidler, stabbing him in the back several times. As a result, Feidler suffered serious injuries, including the loss of a kidney.

¶ 5 Davis unsuccessfully attempted to flee the complex by getting into a moving pizza delivery vehicle. He then attempted to hide behind a parked truck where he was discovered and arrested. He entered a plea of no contest to the charge of aggravated assault and was sentenced to eight years in prison.

¶ 6 Feidler sued Davis, who was an insured under a homeowners policy issued to his parents by Republic. The policy contains an intentional acts exclusion which provides that coverage does not apply to bodily injury "which is expected or intended by the **insured.**" Republic argued that this provision excluded coverage for Davis's stabbing of Feidler because Davis intentionally harmed Feidler.

¶ 7 Feidler settled his case against Davis and, as part of the settlement, Davis assigned to Feidler his rights against Republic. Feidler and Republic then stipulated that if the jury found there was coverage, Feidler would be entitled to policy limits. Republic filed its declaratory action. In a motion for summary judgment, Republic argued that the policy's intentional acts exclusionary clause precluded coverage. The trial court granted the motion and Feidler appealed. In *Republic Insurance Co. v. Feidler (Feidler I )*, 178 Ariz. 528, 875 P.2d 187 (App.1993), we reversed the judgment and remanded, finding that Davis's intoxication and his capacity to form intent created a genuine issue of material fact. Republic again moved for summary judgment, arguing that voluntary intoxication was no longer a defense because of a recent amendment to Arizona Revised Statutes Annotated (A.R.S.) section 13–503 (Supp.1997) (effective Jan. 2, 1994) and that under A.R.S. section 13–807 (1989)[2], Davis

---

1. Davis believes he drank more than a case of beer during the evening. However, it is not clear whether he thought a case contained twelve or twenty-four cans of beer.

2. Section 13–807 was amended by 1993 Ariz. Sess. Laws Ch. 255, § 15, and became effective

January 1, 1994. However, the amended statute applies only to persons who commit a felony offense after January 1, 1994. The felony committed in this case occurred in 1988; therefore, A.R.S. section 13–807 (1989) applies.

had the mental capacity to form intent as a matter of law. The trial court denied the motion.

¶ 8 The case was tried to a jury. The jurors were instructed that they had only one question to answer: "At the time of the stabbing of Robert Feidler, did Thomas Davis possess sufficient mental capacity to form the intent to stab him?" The jury returned a verdict in favor of Feidler. Republic's motion for a new trial and motion for judgment notwithstanding the verdict were denied and Republic appealed.

### ISSUES

I. Did the trial court err by instructing the jury that Republic bore the burden of proving that Davis's acts fell within the exclusionary clause of its policy?

II. Did the trial court err by instructing the jury that Republic bore the burden of proving Davis's mental capacity to form intent?

III. Did the trial court err by instructing the jury that the existence of subjective intent to injure was one of the questions of fact for its determination?

IV. Does A.R.S. section 13–807 preclude Feidler from asserting that Davis was incapable of forming the intent to injure him?

V. Can A.R.S. section 13–503 be applied retroactively to preclude Feidler from arguing that Davis's voluntary intoxication rendered him incapable of forming the intent to injure?

VI. Does substantial evidence exist to support the jury's verdict?

VII. Did the trial court abuse its discretion by allowing Feidler to reopen his case?

VIII. Did the trial court err by awarding attorneys' fees to Feidler because the settlement agreement in Feidler's tort action against Davis precludes such an award?

### STANDARD OF REVIEW

¶ 9 The first three issues discussed involve the trial court's instructions to the jury. Reversal on the basis of a challenge to a jury instruction "is justified only if the instruction was both erroneous and 'prejudicial to the substantial rights of the appealing party.'" *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 504, 917 P.2d 222, 233 (1996) (quoting *Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982)). Whether the error was prejudicial "will not be presumed but must affirmatively appear from the record." *Id.*

### DISCUSSION

I. *Burden of Proving Coverage*

¶ 10 Republic contends that Arizona law requires the insured to bear the burden of proving that his claimed loss falls within the coverage of the insurance policy, i.e., that his injuries were caused by an "occurrence" or "accident." At trial, Republic unsuccessfully argued that it was Feidler's burden to establish coverage by proving that he was the victim of an unintended "accident." Because of the court's ruling on its burden of proof argument, Republic asserts that the trial court incorrectly instructed the jury that Republic, as insurer, had to bear the burden of proving that Davis's acts were intentional and fell within the exclusionary clause of its policy. The jury was instructed as follows:

In this case, the plaintiff, Republic Insurance Company, has the burden of proving that the "intentional acts" exclusion of its policy applies to the conduct of Thomas Davis, its insured, because Davis acted with the intent to stab Michael Feidler with the knife.

¶ 11 Feidler argues that coverage exists because it is undisputed that there is a policy of insurance and that Davis is an insured who caused an injury to Feidler. Feidler argues that Republic must bear the burden of proving that Davis's acts were "intentional" thereby avoiding coverage.

■ ¶ 12 We believe that the issues were framed by Republic's complaint for declaratory relief. In its complaint, Republic asked the trial court to decide if Davis's conduct was intentional and to "declare as a matter of law" that the policy does not provide coverage. The "accident" or "occurrence" argument raised in this appeal was not men-

tioned. Republic impliedly admitted in its complaint that there was a policy of insurance, Davis was an insured, and there was an event that had occurred upon which Feidler was going to claim coverage. The inquiry was focused entirely upon Davis's state of mind and upon the exclusionary provision of the insurance policy.

¶ 13 When the application of an exclusionary clause in an insurance policy is the issue, the insurer has the burden of showing that the loss fell within the exclusion. *Pacific Indem. Co. v. Kohlhase,* 9 Ariz.App. 595, 597, 455 P.2d 277, 279 (1969); *see also Hartford Accident & Indem. Co. v. Villasenor,* 21 Ariz.App. 206, 209, 517 P.2d 1099, 1102 (1974) (insurer that denies coverage has burden of showing that loss is within a policy exclusion); *Arizona Title Ins. & Trust Co. v. Smith,* 21 Ariz.App. 371, 373, 519 P.2d 860, 862 (1974) (because insurer introduced no evidence tending to support exclusion, it failed to meet its burden of proof as to the exclusion); *Vanguard Ins. Co. v. Cantrell,* 18 Ariz.App. 486, 489, 503 P.2d 962, 965 (1972) (insurer had burden of showing loss was within policy exclusion; having failed to show that insured intended the injury to the victim, it failed to meet its burden). The trial court correctly instructed the jury that Republic had the burden of proving that the intentional acts exclusion of the policy applied to preclude coverage.

## II. *Burden of Proof Concerning Mental Capacity to Form Intent*

¶ 14 It is Feidler's position that the exclusionary clause does not void coverage because Davis was too intoxicated to form the intent to injure anyone. In response, Republic argues that because Davis repeatedly stabbed Feidler, which was certain to cause injury, it gave rise to the *Steinmetz–Clark*[3] conclusive presumption of intent to injure. Therefore, it argues that the burden shifted to Feidler to rebut this presumption by proving that Davis lacked sufficient mental capacity to form the intent to injure. Republic argues that because the law presumes a per-

son to be competent and sane at the time of an act, the party that challenges mental capacity bears the burden of proving the lack of capacity.

¶ 15 It appears to us that Republic would have us apply the *Steinmetz–Clark* presumption without first determining if Davis had the mental capacity to form the intent to stab Feidler. We know that if the mental capacity to form intent is present and

> the insured intentionally commits an act calculated to cause some injury, he will not be permitted to deny an intent to injure nor be allowed to evade the scope of the exclusionary clause by pleading that the resultant injury "is different either in character or magnitude from the injury that was intended."

*Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 354–55, 694 P.2d 181, 184–85 (1984) (quoting *Steinmetz,* 121 Ariz. at 271, 589 P.2d at 914). However, the *Steinmetz–Clark* presumption applies only if it has initially been determined that the person whose acts are being questioned possessed sufficient mental capacity to form intent, and then intentionally committed an act calculated to injure. *See Feidler I,* 178 Ariz. at 531–32, 875 P.2d at 190–91. Because the mental capacity to form intent has become an issue, we are left with the question of who must bear the burden of proof.

¶ 16 In some jurisdictions, courts have decided that even though the insurer bears the burden of proving its coverage exclusion, a party arguing insanity to avoid the intentional acts exclusion has the burden of proving such insanity by a preponderance of the evidence. *See State Farm Fire and Cas. Co. v. Miles,* 730 F.Supp. 1462, 1468 n. 5 (S.D.Ind.1990), *aff'd,* 930 F.2d 25 (7th Cir. 1991); *West Am. Ins. Co. v. McGhee,* 530 N.E.2d 110, 112 (Ind.App.1988); *Shelter Mut. Ins. Co. v. Williams,* 248 Kan. 17, 804 P.2d 1374, 1383 (1991); *Midwestern Indem. Co. v. Manthey,* 68 Ohio App.3d 539, 589 N.E.2d 95, 97 (1990). This rule, based on the same argument that Republic makes, presumes that a person is sane until proven

---

**3.** *Steinmetz v. National Am. Ins. Co.,* 121 Ariz. 268, 589 P.2d 911 (App.1978); *Clark v. Allstate*

*Ins. Co.,* 22 Ariz.App. 601, 529 P.2d 1195 (1975).

otherwise. *See McGhee,* 530 N.E.2d at 112; *Manthey,* 589 N.E.2d at 97.

¶ 17 However, courts in other jurisdictions have held that the burden of proof does not shift from the insurer to the insured when lack of intent due to incapacity is argued. The court in *Burd v. Sussex Mutual Insurance Co.,* 56 N.J. 383, 267 A.2d 7, 15 (1970), explained:

> The burden is the carrier's to bring the case within the policy exclusion. Thus, as to intoxication, although in the criminal trial the jury was instructed that it was the defendant's burden to prove and persuade that he was so intoxicated as not to be able to form the intent to commit the atrocious assault and battery, here the burden would be the carrier's to prove and persuade that the injuries were within the exclusion, i.e., that the insured, notwithstanding his intoxication, formed an intent to injure D'Agostino and fired the gun to that end.

(Citations omitted.) Citing *Burd* with agreement, the court in *State Farm Fire & Casualty Co. v. Morgan,* 185 Ga.App. 377, 364 S.E.2d 62, 64 (1987), *aff'd,* 258 Ga. 276, 368 S.E.2d 509 (1988), stated:

> Although there is authority to the contrary, the majority view in other jurisdictions is that voluntary intoxication may destroy the capacity to form the intent required to invoke a policy exclusion for acts "intended or expected" by the insured, and that the burden is on the carrier to prove and persuade that the injuries were within the scope of the exclusion.

*See also Hanover Ins. Co. v. Talhouni,* 413 Mass. 781, 604 N.E.2d 689, 692 (1992) (insurer must show that insured intended the injuries that resulted from his conduct; court declined to adopt different rule where capacity question arose from voluntary intoxication).

¶ 18 The cases that Republic relies on for support are cases where the lack of capacity was a result of insanity. However, it appears that the burden of proof does not shift in cases where the lack of capacity is due to alcohol or drug intoxication. We conclude that the better rule is that where intoxication is the basis for the alleged incapacity to form intent, the burden of proving that the insured acted intentionally remains with the insurer.

¶ 19 In arriving at our conclusion, we considered the public policy underlying both positions. In a criminal case, public policy supports placing the burden of the intoxication defense on the defendant as a means to protect the public from attacks by drunks. *See Burd,* 267 A.2d at 15. We do not believe that the same policy applies when the intentional acts exclusion of an insurance policy is the focus. The intentional acts exclusion was not designed to protect the general public from attacks by drunks. It was designed primarily to avoid compensating the victims of intentional acts by an insured. We agree with the court's view in *Morgan* that a contract of insurance should be construed most strongly against the insurer, especially where the insurer attempts to avoid coverage based upon a policy exclusion. 364 S.E.2d at 64.

¶ 20 Republic correctly notes that in Arizona there is a presumption of mental competency. *Golleher v. Horton,* 148 Ariz. 537, 541, 715 P.2d 1225, 1229 (App.1985). However, this presumption generally applies when the sanity of the defendant is at issue in a criminal trial, *see State v. Cameron,* 146 Ariz. 210, 214, 704 P.2d 1355, 1359 (App.1985), and when the issue is competency to execute documents such as a testamentary document, *see In re Estate of Thomas,* 105 Ariz. 186, 189, 461 P.2d 484, 487 (1969), or a document conveying property, *see Stewart v. Woodruff,* 19 Ariz.App. 190, 194, 505 P.2d 1081, 1085 (1973).

¶ 21 Viewing the evidence in the light most favorable to the prevailing party, Davis was extremely intoxicated when he stabbed Feidler. *See Callender v. Transpacific Hotel Corp.,* 179 Ariz. 557, 559, 880 P.2d 1103, 1105 (App.1993). Once it was established that Davis was intoxicated or impaired by drugs or alcohol, it was Republic's burden to prove that in spite of his intoxication or impairment, he was able to form the intent to injure Feidler, thus bringing the intentional acts exclusion into play.

¶ 22 Republic next argues that because the person asserting self-defense in an insurance coverage case has the burden of proof, the burden should also be on a person claiming incapacity. Republic notes that in *Meere*, 143 Ariz. at 353, 694 P.2d at 183, the Arizona Supreme Court referred to self-defense as an "affirmative claim" by an insured. Republic argues that this reference clearly suggests a defense in which the party asserting it would have the burden of proof.

¶ 23 The court in *Meere* did not specifically discuss who bears the burden of proof once self-defense is raised, but it did allude to the burden of proof by stating,

> [I]f the insured can show facts which might establish that he acted with privilege (as in a sports injury case, for instance) or under claim of right recognized by law (as in self-defense), he will be permitted to explain his subjective intent, and it will be for the fact finder to determine whether he had an underlying purpose to injure.

*Id.* at 359, 694 P.2d at 189. We believe Davis's situation is distinguishable from the self-defense situation. In *Meere*, the insured acknowledged that Meere intended to strike the victim but that he did so only in self-defense. *Id.* at 354, 694 P.2d at 184. Although his act technically fell within the intentional acts exclusion, the exclusion would be avoided if it could be proven that there was no underlying intent to injure. *Id.* at 359–60, 694 P.2d at 189–90. While it may be logical to shift the burden of proving self-defense to a party claiming self-defense, it would not be appropriate to shift the burden to the injured party claiming that his attacker could not form the intent to injure him due to alcohol or drug intoxication.

4. The entire jury instruction on intent reads:
 In this case, you will have only one issue to decide. It is: At the time of the stabbing of Robert Feidler, did Thomas Davis possess sufficient mental capacity to form the intent to stab him?
 An insured who suffers from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition acted on an irrational impulse does not act intentionally for purposes of an intentional acts exclusion in insurance coverage.

¶ 24 The trial court did not err by instructing the jury that Republic had the burden of proving that Davis was able to form the intent to injure Feidler in order to invoke the intentional acts exclusion of the homeowners insurance policy.

III. *Jury Instruction Concerning Proof of Subjective Intent*

¶ 25 Republic argues that the trial court erroneously instructed the jury that Republic had to prove Davis's subjective intent. It argues that Davis's subjective intent should not have been an issue. In *Feidler I*, we determined that the overriding question to be decided was whether Davis possessed sufficient mental capacity to form an intent to act. 178 Ariz. at 532, 534, 875 P.2d at 191, 193. It follows from our decision that if Davis had the mental capacity to form the intent to injure Feidler, the *Steinmetz–Clark* presumption would conclusively establish Davis's subjective intent to injure and coverage would be precluded. *Id.* at 532, 875 P.2d at 191. If mental capacity could not be proven, the intentional acts exclusion would not apply and there would be coverage. *Id.* Therefore, Republic contends that the trial court's instruction that the "existence of intent is one of the questions of fact for your determination" was erroneous.[4]

¶ 26 First, we disagree with Feidler's contention that Republic's objections were vague. From our review of the record, we believe Republic's objections were more than sufficient to apprise the trial court of its concerns and to allow the court to correct any potential problem.

¶ 27 We agree with Republic that the jury's inquiry was to be into Davis's mental capacity. However, it is difficult for us to

 "Intent Defined"
 "Intent," "intentionally," or "with intent to," as used above, mean that Thomas Davis's objective or purpose was to stab Michael Feidler with the knife.
 Intent may be inferred from all the facts and circumstances disclosed by the evidence. Intent need not be established exclusively by direct proof. The existence of intent is one of the questions of fact for your determination.

understand how the instruction could have been drafted to inquire into mental capacity without mentioning the ultimate object of the inquiry. The inquiry, as suggested in *Feidler I*, into Davis's mental capacity to form intent obviously refers to the intent to injure Feidler.

¶ 28 We also agree with Republic's contention that the instruction could appear to be a two-part instruction. Although the first segment of the instruction focuses on mental capacity, it could be argued that once the jury determined mental capacity, it was to focus on Davis's subjective intent. This argument finds support in the latter portion of the instruction that defines intent.

■ ¶ 29 For the intentional acts exclusion to preclude coverage, "the insured must subjectively intend not only to commit the act, but also to harm the victim." *United Services Auto. Ass'n v. DeValencia*, 190 Ariz. 436, 438–39, 949 P.2d 525, 527–28 (App.1997). "[T]he intent may be actual or may be inferred by the nature of the act and the accompanying substantial certainty that some significant harm will occur." *Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 190, 939 P.2d 1337, 1343 (1997).

■ ¶ 30 As we noted in *Feidler I*, the conclusive presumption of intent does not apply if the insured lacked the " 'mental capacity to act rationally.' " 178 Ariz. at 532, 875 P.2d at 191 (quoting *Globe Am. Cas. Co. v. Lyons*, 131 Ariz. 337, 339–40, 641 P.2d 251, 253–54 (App.1981)). The test to determine whether an insured possessed the mental capacity to form intent in intoxication cases is as follows:

> [I]f the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason and while in that condition [acted] on an irrational impulse . . . his act cannot be treated as "intentional" within the connotation of [the] insurance contract.

*Lyons*, 131 Ariz. at 340, 641 P.2d at 254 (quoting *Ruvolo v. American Cas. Co.*, 39 N.J. 490, 189 A.2d 204, 208–09 (1963)). In *Feidler I*, we directed the trier of fact to determine whether Davis possessed sufficient

mental capacity to form the intent to act under the *Lyons* standard. 178 Ariz. at 532, 875 P.2d at 191. We determined that the conclusive presumption would not apply if Davis was so intoxicated that he lacked the mental capacity to act intentionally. *Id.* If Davis was incapable of forming intent, Republic could not invoke the intentional acts exclusion. *Id.* It follows that once the jury resolved the issue of Davis's mental capacity, it did not have to decide whether Davis intended to injure Feidler, and Davis's subjective intent became immaterial. Although the intent portion of the instruction was unnecessary, we do not believe its inclusion warrants reversal.

¶ 31 Our conclusion finds support in the fact that the instruction *first* required the jury to assess whether Davis had sufficient mental capacity to form the intent to stab Feidler. The expert testimony presented to the jury made a distinction between capacity to perform routine, automatic acts, such as walking, and capacity to perform acts that involve higher reasoning skills, such as forming an intent to injure. Once the jury resolved the capacity issue, the intent issue became surplusage. Any consideration the jury gave that issue was of no moment. Because the resolution of the intent portion of the instruction was secondary to the resolution of the capacity issue, the jury could not have been misled, nor was Republic prejudiced by the instruction.

## IV. *Application of A.R.S. Section 13–807*

■ ¶ 32 Republic also argues that the trial court should have granted its motion for summary judgment because, as a matter of law, Davis had the mental capacity to form intent. This argument is based on Republic's contention that Davis's no contest plea gave rise to the application of A.R.S. section 13–807, which provided that "[a] defendant convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas." Republic argues that Davis's conviction for aggravated assault established that he acted at least recklessly.

Recklessly is defined by A.R.S. section 13–105(9)(c) (Supp.1997) as meaning that "a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur." Republic argues that Davis could not have been suffering from a mental derangement that deprived him of his capacity to act rationally. We review a question of law *de novo. Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

¶ 33 We believe *Feidler I* disposes of this argument. There, we held that A.R.S. section 13–807 did not prevent Feidler from arguing that Davis was so intoxicated that he could not form the intent to injure. 178 Ariz. at 532, 875 P.2d at 191. We agree that in order for Davis to have been convicted of aggravated assault, he had to have at least acted recklessly due to voluntary intoxication. *Id.* at 533, 875 P.2d at 192.

¶ 34 However, the last sentence of A.R.S. section 13–105(9)(c) provides that: "A person who creates such a risk but is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk." As we explained in *Feidler I:*

This statute provides that a person acts recklessly even though he is voluntarily intoxicated at the time of his acts. Plainly stated, voluntary intoxication is not a defense to the charge of recklessly committing aggravated assault. Even if Davis was so intoxicated that he was not able to form an intent to injure, he still could be guilty of recklessly committing aggravated assault.

. . . .

Because voluntary intoxication may deprive the insured of the mental capacity necessary to form an intent to injure, an insured can lack an intent to injure for purposes of the policy exclusion but at the same time can commit an aggravated assault by acting recklessly.

*Id.* (citation omitted).

¶ 35 Arizona Revised Statutes Annotated section 13–105(9)(c) defines recklessly as involving an awareness of and conscious disregard of a substantial and unjustifiable risk. It also provides that a defendant will be deemed to have acted recklessly even if he was unaware of the risk due to voluntary intoxication. Davis cannot deny in a civil proceeding that he committed aggravated assault by acting recklessly due to voluntary intoxication. Recklessness can be established even though the intoxicated defendant is unaware of the risk. Therefore, Feidler was not precluded from showing to the jury Davis's lack of capacity to form the intent to injure.

## V. *Application of A.R.S. Section 13–503*

██ ¶ 36 Republic points out that the Arizona legislature amended A.R.S. section 13–503 effective January 2, 1994. This statute now provides that temporary, voluntary intoxication "does not constitute insanity and is not a defense for any criminal act or requisite state of mind." It argues that this statute should be applied retroactively in this civil case to preclude Feidler from using Davis's voluntary intoxication to prove lack of capacity to form intent.

██ ¶ 37 Without deciding whether this criminal statute can be applied in a civil insurance case, we conclude that the statute cannot be applied retroactively. A statute is not retroactive unless expressly declared so by the legislature. A.R.S. § 1–244 (1995); *Wilco Aviation v. Garfield*, 123 Ariz. 360, 362, 599 P.2d 813, 815 (App.1979). The exception to this rule is that statutory changes in procedures or remedies may be applied to pending proceedings unless the statute affects or impairs vested rights. *Wilco*, 123 Ariz. at 362, 599 P.2d at 815. The application of the statute as urged by Republic would clearly affect Feidler's substantive rights by preventing him from establishing that Davis did not possess sufficient mental capacity to form the intent to injure him.

## VI. *Sufficiency of the Evidence to Support the Verdict*

¶ 38 Republic argues that the jury's verdict was contrary to the overwhelming weight of the evidence and that the trial court erred by denying its motion for directed verdict and motion for judgment notwithstanding the verdict. Republic cites to testimony from experts for both parties and from

Davis that it believes cuts against Feidler's theory that Davis was suffering from a "blackout" when he stabbed Feidler.

 ¶ 39 When sufficiency of the evidence to support a verdict is questioned, we will not reweigh the conflicting evidence but instead we will examine the record to determine whether substantial evidence exists to support the verdict. *Callender*, 179 Ariz. at 562, 880 P.2d at 1108. The record reflects that although the witnesses, particularly the expert witnesses, disagreed on their assessments of Davis's condition and ability to form intent at the time of the stabbing, substantial evidence exists to support the verdict.

¶ 40 To meet the *Lyons* standard, the record must contain "credible evidence that the insured was truly deprived of the ability to govern his or her actions in a rational manner." *State Farm Fire and Cas. Co. v. Brown*, 183 Ariz. 518, 524–25, 905 P.2d 527, 533–34 (App.1995). From our review of the record and the testimony of the expert witnesses, we conclude that substantial, credible evidence exists to support the conclusion that Davis was deprived of his ability to act rationally, which in turn supports the jury's verdict.

### VII. *Reopening of Feidler's Case*

¶ 41 Dr. Lisa Anne Sparks, one of Feidler's expert witnesses, stated on direct examination that she did not recall reading the criminal hearing transcript. The trial court allowed Feidler to reopen his case to further examine her and rehabilitate her testimony. During redirect examination, Dr. Sparks testified that she recalled reading the criminal hearing transcript and that nothing she read changed her opinion. She stated that she recalled reading it about six years before the civil trial but that she had misplaced it during a move.

 ¶ 42 We review a trial court's decision to allow a party to reopen its case for a clear abuse of discretion. *Bowman v. Hall*, 83 Ariz. 56, 59–60, 316 P.2d 484, 486 (1957). Dr. Sparks's testimony upon the reopening of the case was brief and served only to clarify a previous statement that she discovered was erroneous. We conclude that the trial court did not abuse its discretion by reopening the case.

### VIII. *Award of Attorneys' Fees*

 ¶ 43 Republic argues that Feidler's stipulation and settlement of his tort action against Davis precludes an award of attorneys' fees to him. Republic asserts that the express terms of the settlement agreement limited Feidler's possible recovery to policy limits.

¶ 44 Republic asserts that the decision in *Employers Mutual Casualty Co. v. McKeon*, 170 Ariz. 75, 821 P.2d 766 (App.1991), controls this issue. In *McKeon*, this Court held that where the parties stipulated to the amount of damages without mention of interest, the insured was not entitled to interest. *Id.* at 80, 821 P.2d at 771. Where parties could have negotiated for an award of interest but did not do so, we are not inclined to interpose such a term in their agreement. *Id.* at 79, 821 P.2d at 770.

¶ 45 In any event, we do not believe *McKeon* has any application in this case. The settlement agreement served only to conclude a separate tort action. The declaratory judgment action went forward. Ordinarily, in a declaratory judgment action concerning interpretation of a contract, the prevailing party can seek an award of attorneys' fees. *See Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 394, 573 P.2d 80, 85 (App.1977). If Republic wanted to ensure that the settlement of the tort action would include attorneys' fees for the declaratory judgment action, it could have so negotiated. It did not do so, and we will not rewrite the agreement. Therefore, we affirm the award of attorneys' fees.

### CONCLUSION

¶ 46 Feidler requests an award of attorneys' fees incurred in this appeal pursuant to A.R.S. section 12–341.01(A) (1992). Because Feidler is the prevailing party, we grant this request. Feidler may establish the amount of his award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

PATTERSON and GERBER, JJ., concur.