880 P.2d 1103

**John Scott CALLENDER and Marilyn Wolfsen, Plaintiffs/Appellants,**

v.

**TRANSPACIFIC HOTEL CORPORATION, a California corporation, doing business as The Nautical Inn Resort and Conference Center, Defendant/Appellee.**

**No. 2 CA–CV 93–0235.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 30, 1993.

Review Denied Sept. 20, 1994.

Begam, Lewis, Marks, Wolfe & Dasse by Elliot G. Wolfe, Phoenix, for plaintiffs/appellants.

Struckmeyer and Wilson by Donald R. Wilson and William G. Caravetta, Phoenix, for defendant/appellee.

### OPINION

ESPINOSA, Presiding Judge.

Plaintiffs/appellants John Scott Callender and Marilyn Wolfsen appeal from an adverse jury verdict in their negligence action against defendant/appellee Transpacific Hotel Corporation, and the trial court's denial of their motion for new trial.[1] On appeal, Callender contends that the trial court erred in refusing his jury instructions on negligence *per se*

---

1. John Scott Callender suffered the actual physical injury that was the basis of the negligence action against Transpacific. Marilyn Wolfsen, Callender's mother, filed a derivative claim for the loss of "love, affection, companionship, com-

based on the statutory prohibition against delivery of more than two spirituous liquor beverages to one person at one time by a liquor licensee, and on the common law duties of a licensee. Callender further argues that he is entitled to a new trial because Transpacific's counsel "might have gained an unfair advantage" by referring to an appellate memorandum decision, in violation of Ariz.R.Civ.App. P. 28, 17B A.R.S. Lastly, Callender argues that the trial court erred in denying his motion for new trial because the jury's verdict was contrary to the weight of the evidence. We affirm.

### Facts and Procedural History

■ On appeal from a judgment entered on a jury verdict, we view the evidence, and all reasonable inferences arising therefrom, in a light most favorable to the prevailing party. *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 646 P.2d 319 (App.1982). On March 25, 1988, Callender and two friends, Dan Carvalho and Mitch Lantow, hitched Carvalho's boat to Lantow's truck and drove to Lake Havasu for the weekend. They left Santa Ana, California late that night, and arrived at the lake early the next morning. After breakfast, Callender and Carvalho launched the boat and headed for Copper Canyon, a popular gathering place. Lantow stayed behind. At Copper Canyon, Callender "jump[ed] from boat to boat," drinking beer and "acting loud and obnoxious." Shortly before noon, Lantow arrived in another boat and Callender went with him. Two teenage girls joined them and later that afternoon they left Copper Canyon for the Nautical Inn, a resort owned by Transpacific.

The boat docked at the Nautical Inn, and Lantow went to the outdoor bar and bought a "bucket" of Mai Tais. The Mai Tai "bucket" was an 80–ounce container filled with ice, fruit juice, four shots of 80–proof rum, and two shots of 151–proof rum. Lantow returned to the boat with the drink, and Callender, the girls, and the owner of the boat

fort, care and support of her son." Although Wolfsen is a party to this action, we will refer to the motions and claims in this case as belonging to Callender.

proceeded to drink it. Callender then went to the bar, bought another "bucket," and returned to the boat. Carvalho had joined the group at about four o'clock, and they subsequently left for the campground where the girls were staying. En route, Callender and the girls drank the second "bucket." The girls were dropped off on the beach in order to retrieve their inflatable raft and Callender got in the shallow water to push the boat off. When the girls had problems rowing their raft, Callender dove off the boat to help them. Lantow noticed him floating face down in the water, and Carvalho jumped off the back of the boat, swam to him, turned him over, and moved him into shallower water. Callender had fractured his neck in the dive, resulting in quadriplegia.

Callender sought damages from Transpacific, contending that Transpacific's negligence "in selling, serving, furnishing, allowing to be served, or not preventing the service of, alcohol to John Scott Callender when he was intoxicated and/or in an amount that would foreseeably impair his judgment and reactions, was a cause of, or contributed to, the injuries [he] suffered." After a nine-day trial, the jury returned a verdict in favor of Transpacific. Callender's motion for new trial was denied, and this appeal followed.

### Jury Instructions

■ Callender argues that the trial court erred in instructing the jury and in refusing to give certain requested instructions. Jury instructions are considered in their entirety on appeal. *Timmons v. City of Tucson,* 171 Ariz. 350, 830 P.2d 871 (App. 1991). In determining whether the instructions given were correct, the test is "whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at a correct decision." *Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 281, 486 P.2d 176, 179 (1971); *see also Timmons, supra.* The court is required to refuse instructions which do not correctly state the law. *Durnin v. Karber Air Conditioning Co.,* 161 Ariz. 416, 778 P.2d 1312 (App.1989).

Callender contends that the trial court erred in refusing his negligence *per se* instruction based on A.R.S. § 4–244(24), which

prohibits delivery of "more than two spirituous liquor beverages to one person at one time for that person's consumption." He argues that the jury should have been permitted to decide whether the sale of the "bucket" constituted delivery of more than two spirituous liquor beverages in violation of the statute. The legislature defined "spirituous liquor" in A.R.S. § 4–101(30), but did not define its intended meaning of a "spirituous liquor beverage"; therefore, we must interpret the statute.

■ The primary principle of statutory interpretation is to determine and give effect to the legislature's intent; the determination of such intent should not be left to the jury's speculation. *Salinas v. Kahn,* 2 Ariz.App. 181, 407 P.2d 120, *modified on other grounds,* 2 Ariz.App. 348, 409 P.2d 64 (1965). When a statute's language does not disclose legislative intent, we must "read the statute as a whole, and give meaningful operation to all of its provisions." *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Two sections of the same statute should be interpreted consistently, especially when they use identical language. *Id.*

■ Callender asserts that "spirituous liquor beverage" as used in A.R.S. § 4–244(24) should be defined by content, not container. However, that subsection also prohibits the sale or delivery to a person of "an unlimited number of spirituous liquor beverages during any set period of time for a fixed price." This usage of the term "spirituous liquor beverage" in conjunction with "an unlimited number" clearly implies a definition based on containers rather than content. Moreover, there are significant practical difficulties in construing the statute as Callender urges. Transpacific introduced evidence that popular alcoholic drinks contain widely varying amounts of alcohol and that there are no standards in this regard. For example, there was testimony that one "Long Island Ice Tea" contains up to four ounces of liquor in a 17–ounce glass, almost the same amount as in the defendant's 80–ounce "bucket." No legislature or court that we are aware of has attempted to regulate the alcoholic content of individual drink servings and, on the facts of this case, we decline to be the first. We

need not reach Callender's argument that a licensee could escape liability by serving unlimited quantities of alcohol in "trash cans" as that is neither the facts nor the issue before us.

Furthermore, we presume the legislature expressed its meaning in as clear a manner as possible. *Tanner Companies v. Arizona State Land Dept.,* 142 Ariz. 183, 688 P.2d 1075 (App.1984). If the legislature had intended to regulate the alcoholic content of individual drinks or the size of containers used to serve them, it would have said so. *See Tanner Companies v. Arizona State Land Dept., supra* (had legislature meant to limit common mineral materials statute to materials commonly used for aggregate, road material rip-rap, fill, etc., it would have said so and eliminated remainder of statute). Because we reject Callender's construction of the statute, we find no error in the trial court's refusal of Callender's negligence *per se* instruction.

Callender also contends that the trial court erred in refusing his general negligence instructions.[2] In a related argument, Callender contends that A.R.S. § 4–311, which codified a licensee's liability for serving minors or intoxicated people, does not abrogate a liquor licensee's "common law duty" to sell alcohol "reasonably under the circumstances." The trial court instructed the jury that, "A licensee is liable for personal injuries if, one, the licensee sold spirituous liquor to a purchaser who was obviously intoxicated and, two, the purchaser consumed the spirituous liquor sold by the licensee, and three, the consumption of spirituous liquor was a proximate cause of the [in]jury."

In 1983, Arizona's supreme court abolished the common law immunity of tavern owners for injuries sustained by third parties resulting from an intoxicated customer's acts. *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983). The *Ontiveros* court held that those who furnish alcohol have a duty of care and may be held liable "when they sell liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may be injured either on or off the premises." 136 Ariz. at 513, 667 P.2d at 213. The court extended the duty to require liquor suppliers to exercise reasonable care "in furnishing liquor to those who, by reason of immaturity or previous over-indulgence, may lack full capacity of self-control and may therefore injure themselves, as well as others." *Brannigan v. Raybuck,* 136 Ariz. 513, 516, 667 P.2d 213, 216 (1983). Thus, it is clear that a liquor licensee has a duty to exercise reasonable care in serving alcohol to intoxicated patrons and minors.[3]

Callender cites *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n Inc.,* 172 Ariz. 587, 838 P.2d 1348 (App.1992), and *Carrillo v. El Mirage Roadhouse, Inc.,* 164 Ariz. 364, 793 P.2d 121 (App.1990), for the proposition that reasonable jurors could have found Transpacific liable for selling a quantity of alcohol in an open container that it knew or should have known "created a foreseeable risk of serious injury to the plaintiff or others." *Petolicchio,* however, is consistent with the holdings in *Ontiveros* and *Brannigan* because it involved knowingly making alcohol available to an employee who distributed it to minors, not sober adults. Furthermore, *Carrillo* is inapposite. In that case, the court held that a licensee could be liable if it had constructive knowledge that an intoxicated person would receive and consume alcohol purchased by others who were not intoxicat-

---

2. Callender proposed the following instructions:
   Even if you find that the defendant did not violate any statute, you may still find that the defendant was negligent if the defendant did not act with reasonable care in the sale of alcohol.
   A seller of alcohol must conduct itself with reasonable care when dispensing alcohol and must not sell alcohol where the sale creates a foreseeable risk of harm to the customer or to others.

3. These duties were codified by the legislature in 1986. Under A.R.S. § 4–311(A), a licensee is liable for property damage, personal injury, or wrongful death if a court or a jury finds the licensee sold spirituous liquor either to a purchaser who was obviously intoxicated, or to a purchaser under the legal drinking age, the purchaser consumed the spirituous liquor sold by the licensee, and the consumption of spirituous liquor was a proximate cause of the injury, death or property damage.

562

ed. There was no evidence to support constructive knowledge on the part of Transpacific here. On the contrary, the jury implicitly found that Callender was displaying no signs of obvious intoxication when he purchased the drink. Because none of the authorities relied upon by Callender expand the law in the manner he asserts, we cannot conclude that the trial court erred in refusing Callender's proposed instructions.

### Violation of Rule 28, Ariz.R.Civ.App.P.

■ Callender next argues that he is entitled to a new trial because Transpacific "might have gained an unfair advantage by attaching and repeatedly citing a memorandum decision of the court of appeals (in violation of Rule 28 of the Arizona Rules of Civil Appellate Procedure), and in failing to follow a judge's order to excise all such references from the records." Transpacific attached a copy of *Riggs v. State of Arizona, Transpacific Hotel Corp., et al.,* 1 CA–CV 90–011 (memorandum decision April 30, 1992), to a motion in limine. The judge hearing the motion, who was not the trial judge, ordered that all references to the memorandum decision be stricken from Transpacific's replies to Callender's motions in limine. At trial, Transpacific requested "applicable jury instructions given by [the trial judge] in the *Riggs v. Nautical Inn* case," and attached a transcript of those instructions. Callender contends that the trial judge was "arguably influenced" by these improper references in his decision not to instruct the jury on general common law negligence.

■ To justify reversal, trial errors must be prejudicial to the substantial rights of the appealing party. *Walters v. First Federal Savings and Loan Association of Phoenix,* 131 Ariz. 321, 641 P.2d 235 (1982). Furthermore, the prejudicial nature of the error must affirmatively appear from the record. *Id.* In this case, assuming *arguendo* a trial error occurred, Callender was not prejudiced. As discussed above, the trial judge properly instructed the jury on a liquor licensee's liability for injuries resulting from a customer's intoxication. *See Western Technologies, Inc. v. Sverdup & Parcel, Inc.,* 154 Ariz. 1, 739 P.2d 1318 (App.1986) (even if trial court improperly considered matters

outside pleadings in granting defendant's motion to dismiss, plaintiff failed to demonstrate harm because complaint failed to state cause of action). It was within the trial court's broad discretion whether to find a violation of Rule 28 and sanction Transpacific; it apparently chose not to. *Cf. Wright v. Hills,* 161 Ariz. 583, 780 P.2d 416 (App.1989) (appropriateness of sanction for violation of Ariz.R.Civ.P. 11, 16 A.R.S., within trial court's discretion); *B & R Materials, Inc. v. United States Fidelity and Guaranty Co.,* 132 Ariz. 122, 644 P.2d 276 (App.1982) (decision not to sanction discovery violation matter of trial court's discretion).

### Verdict Contrary to the Evidence

■ Finally, Callender argues that the jury ignored uncontradicted and unimpeached testimony of lay and expert witnesses, which resulted in a verdict that was contrary to the weight of the evidence. When sufficiency of the evidence to support a judgment is questioned, we will not reweigh conflicting evidence; rather, we will examine the record to determine whether substantial evidence exists to support the judgment. *Whittemore v. Amator,* 148 Ariz. 173, 713 P.2d 1231 (1986).

■ Within this argument, Callender contends that the trial court erred in refusing to instruct the jury that it "may not arbitrarily reject uncontradicted and unimpeached testimony of a disinterested witness." The jury received standard RAJI instructions on evaluating witness testimony, including, "You may accept everything a witness says, or part of it, or none of it," and, with regard to expert testimony, "You may accept it or reject it, in whole or in part, and you should give it as much weight as you think it deserves." Callender does not allege that the instructions were erroneous, and we find that they accurately stated the law. *See Pugh v. Cook,* 153 Ariz. 246, 735 P.2d 856 (App.1987) (witness credibility is a matter for the trier of fact). Moreover, assuming Callender's proposed instruction was a correct statement of law, it was not applicable here because the testimony of the "disinterested" witness, appellant's expert, was not "uncontradicted and unimpeached."

On the issue of whether Transpacific violated A.R.S. § 4–311 by serving alcohol to

Callender when he was allegedly intoxicated, Callender's expert testified, based on certain assumed facts and Callender's blood test results at the hospital, that Callender would necessarily have displayed obvious signs of intoxication when he purchased the "bucket" of Mai Tais. Those assumed facts came from the depositions of Callender, Lantow, and Carvalho. However, Carvalho's testimony was impeached as to Callender's behavior, and at what point he first began displaying any sign of intoxication. Because the expert's opinion was predicated on assumptions whose factual basis was not "unimpeached," Callender was not entitled to his requested instruction.

For similar reasons we reject Callender's contention that the verdict was contrary to the weight of the evidence. In addition to the impeachment of Carvalho's testimony, Callender himself attributed his loud and obnoxious behavior after two beers to the surroundings, not the alcohol. Lantow's deposition, read to the jury, included testimony that Callender and the girls drank the first "bucket" quickly and Callender immediately returned to the bar for another. There was also testimony from rescue personnel that Callender did not appear intoxicated when they responded to the accident scene and spoke with him. We "will *not* weigh evidence to determine its preponderance on a disputed question of fact; our only concern is whether facts have been established which might reasonably support the trial court's judgment." *Whittemore* 148 Ariz. at 175, 713 P.2d at 1233 (emphasis in original). The jury was in the best position to evaluate the evidence, and sufficient evidence was presented from which it could properly find that Callender was not obviously intoxicated when he purchased the drink. We find no error.

The judgment in favor of Transpacific is affirmed.

DRUKE, C.J., and HATHAWAY, J., concur.