969 P.2d 183

**PIMA COUNTY, a body politic and corporate, Plaintiff/Appellee,**

v.

**Ramon GONZALEZ and Rojelia Gonzalez, husband and wife, Defendants/Appellants.**

2 CA–CV 97–0140.

Court of Appeals of Arizona, Division 2, Department A.

April 30, 1998.

Redesignated as Opinion and Publication Ordered June 19, 1998.

Barbara LaWall, Pima County Attorney by Thomas E. Dugal, Tucson, for Plaintiff/Appellee.

Stubbs & Schubart, P.C. by Damian M. Fellows, Tucson, for Defendants/Appellants.

OPINION

BRAMMER, Judge.

¶ 1    Pima County brought a condemnation action against appellants, Ramon and Rojelia Gonzalez, to acquire a sewer easement over a portion of their property. The Gonzalezes appeal from a $6,050 jury verdict in their favor, asserting that the award does not reflect "just compensation." They argue that (1) the trial court erroneously rejected their requested jury instructions on property valuation and severance damages, (2) the jury heard or considered improper evidence of a special benefit, and (3) Pima County elicited inappropriate evidence about its likely "minimal use" of the easement. We affirm.

### Facts and Procedural History

¶ 2    We view the facts in the light most favorable to sustaining the verdict. *Hutcherson v. City of Phoenix*, 188 Ariz. 183, 933 P.2d 1251 (App.1996). The Gonzalezes own and live on approximately eight-tenths of an acre located adjacent to the state right-of-way along Interstate 19 (I–19) between Tucson and Nogales. In November 1994, Pima County sued to condemn a twenty-foot wide strip along the eastern side of their property adjacent to the I–19 right-of-way for a sewer easement. Within the easement area are not only naturally growing vegetation but also other vegetation the Gonzalezes planted and have cared for. The easement area is approximately one-eighth of the Gonzalezes' parcel.

¶ 3    The jury's function at trial was two-fold: (1) to determine the monetary amount that would fairly compensate the Gonzalezes for the parcel of land Pima County was taking and (2) to determine the amount of severance damages, if any, representing the amount by which the taking would decrease the value of the remaining property. Each party presented the expert testimony of a real estate appraiser as to the fair market value of the easement and the amount of severance damages. Their opinions of these values differed significantly.

¶ 4    Although both appraisers agreed that vegetation added value to the property, they differed as to the appropriate method to use

in calculating the values. The Gonzalezes' appraiser used the cost approach method, which placed a value on the vegetation based on the cost of replacing it with plants of like kind and size. The replacement cost purportedly reflected the value the vegetation added to the property. The witness also concluded that the vegetation in the easement area provided the Gonzalezes' property a noise and aesthetic buffer from I–19 and that the value of the remaining portion of the property would be decreased because this buffer would be destroyed. In addition, he stated that the sewer line that would be placed in the easement after the taking would lower the value of the remaining parcel.

¶ 5 Pima County's appraiser valued the vegetation based solely on its contributory value to the land. He included the natural vegetation as part of the initial land value and added the cost to replace the vegetation the Gonzalezes had planted with smaller size trees and plants, believing that to be a more accurate assessment of the property's fair market value. Comparing the Gonzalezes' property after the taking with other comparable properties with sewer lines located on them, he concluded that the value of the Gonzalezes' remaining property would not be affected. Additionally, contrary to the opinion of the Gonzalezes' appraiser, an engineer consultant to Pima County who had examined the vegetation in the easement area testified that it did not provide an effective barrier from highway noise.

### Jury Instructions on Valuation

¶ 6 The Gonzalezes argue that the trial court erred in refusing to give their requested jury instructions five, seven, and eleven, which dealt with valuation methods and severance damages. They also argue that the instruction the court gave about the effect of the vegetation on the value of the land "was not supported by Arizona law nor did it satisfy the constitutional requirement of just compensation."

¶ 7 "Jury instructions are considered in their entirety on appellate review and it is not error for the trial court to refuse to give a requested instruction that is covered

adequately by the given instructions." *Haynes v. Syntek Finance Corp.*, 184 Ariz. 332, 341, 909 P.2d 399, 408 (App.1995). In determining whether the instructions given were correct, the test is whether, considering the instructions as a whole, the jury was properly guided in arriving at a correct decision. *Callender v. Transpacific Hotel Corp.*, 179 Ariz. 557, 880 P.2d 1103 (App.1993). "The court is required to refuse instructions which do not correctly state the law," *id.* at 560, 880 P.2d at 1106; but when the court instructs the jury on a theory that is not supported by the facts, we must reverse. *City of Phoenix v. Clauss*, 177 Ariz. 566, 869 P.2d 1219 (App.1994).

¶ 8 Underlying the valuation of condemned property is the constitutional principle that a condemnee is entitled to just compensation. Ariz. Const. art. II, § 17; *Maricopa County v. Barkley*, 168 Ariz. 234, 812 P.2d 1052 (App.1990). Just compensation includes two separate inquiries, the fair market value of the portion of property actually taken and any diminution of the remaining parcel's fair market value after the taking. *State ex rel. Miller v. Filler*, 168 Ariz. 147, 812 P.2d 620 (1991). There are various methods of property valuation, all of which, depending on the circumstances, are appropriate. *Barkley*. "[T]he most frequently used method, and arguably the preferred method, is that which estimates market value based on sales of property comparable to the condemned property." *Id.* at 241, 812 P.2d at 1059. It is only when meaningfully comparable sales are not readily available that other methods may be used. *Id.; Calmat of Arizona v. State ex rel. Miller*, 172 Ariz. 300, 836 P.2d 1010 (App.1992), *vacated in part on other grounds*, 176 Ariz. 190, 859 P.2d 1323 (1993).

¶ 9 The Gonzalezes argue that because there was no "market" for the vegetative buffer, the only way to justly compensate them is to value their loss on a cost basis approach. A cost basis approach to valuation determines what it would cost to acquire the land and to restore its improvements to the same degree prior to the taking. *See Pima County v. Palos Companies Un-*

*limited,* 140 Ariz. 481, 682 P.2d 1148 (App. 1984). The Gonzalezes cite *Dixon v. City of Phoenix,* 173 Ariz. 612, 845 P.2d 1107 (App. 1992), as support for the proposition that the cost basis approach is applicable here. Although *Dixon* did not rule on the cost basis approach in the context of eminent domain actions, they argue its reasoning that the "injured party shall be fully compensated" should control here. We disagree. *Dixon* specifically found that, although the condemnees could recover the restoration costs of the vegetation caused by the *"[c]ity's breach of the right of entry agreement* [,] . . . they would be unable to recover for the destruction of the vegetation as an item of damage in eminent domain." 173 Ariz. at 618, 845 P.2d at 1113 (emphasis added). The court also stated that, "in appropriate cases, a landowner whose vegetation has been destroyed by a trespass may receive damages based on restoration costs." *Id.* at 622, 845 P.2d at 1117. These comments, in the context of a damage action for breach of contract, nowhere indicate that the cost basis approach is proper for valuing vegetative restoration in eminent domain cases.

¶ 10  Although our research has not revealed any Arizona case that specifically discusses the appropriate method for valuing vegetation in eminent domain cases, there is case law that applies the cost basis approach "[o]nly where it can be shown that there is no market for the property in question." *Calmat,* 172 Ariz. at 305, 836 P.2d at 1015; *see also Palos Companies Unlimited* (although restoration cost may be relevant on issue of damages, it cannot be separately assessed without reference to loss in fair market value and is allowable substitute only if evidence of market value is unavailable). Here, Pima County's appraiser testified that there is an abundance of undeveloped property with natural vegetation and that such property is regularly sold. He stated that, with respect to the planted vegetation, it is the contributory value to the land that is determinative, not the actual replacement cost. He further stated that, if replacement cost was used, the cost could potentially exceed the value of the property itself.

¶ 11  Recognizing the soundness of this reasoning, other jurisdictions have consistently held that vegetation is generally not to be valued separately from the parcel taken and then added to the value of the parcel, but rather is to be viewed in the context of how its presence affects the fair market value of the entire property. *See Cramer v. Arkansas Oklahoma Gas Corp.,* 316 Ark. 465, 872 S.W.2d 390 (1994) (condemnee not entitled to separate damages resulting from destruction of trees that may be injured in process of constructing easement); *Walkenhorst v. State Dep't of Roads,* 253 Neb. 986, 573 N.W.2d 474 (1998) (condemnees cannot be compensated for value of trees, but only for fair market value of land taken, including trees); *see also* 4 Julius L. Sackman, et. al., *Nichols on Eminent Domain,* § 13.09[1] (3d ed. 1994). We agree that this is a sound approach and we conclude the proper method for valuing the vegetation is the comparable sales approach. We therefore review the Gonzalezes' requested jury instructions numbers seven and eleven in light of this conclusion.

¶ 12  Instruction number seven would have permitted the jury to consider the intrinsic value and restoration costs of the vegetation, and number eleven explained various valuation approaches, specifically, the cost basis approach. Although the Gonzalezes contend there is no ascertainable market value for their land with the vegetation on it, making the cost basis approach the proper method to use, the record supports a contrary conclusion. Pima County's appraiser testified that he had "researched the market for comparable sales . . . to the subject property" in similar areas. He also stated he had calculated the value of the planted vegetation according to its contribution to the total value of the land. His testimony not only followed the position of other jurisdictions with respect to valuing vegetation, but conformed to Arizona's view as to when a cost basis valuation method is appropriate. *See Calmat.* Because the record supports valuing the property using a comparable sales approach, we conclude that requested instructions numbers seven and eleven were incorrect statements of the law, were unsupported by the facts, and would have been

**22**

misleading to the jury. Therefore, the trial court properly refused to give these instructions. *See Callender.*

¶ 13  The Gonzalezes' requested jury instruction number five, although almost identical to the severance damage instruction the court gave, additionally would have permitted the jury to find that the vegetation acted as a potential buffer. Pima County argues that this instruction is an improper comment' on the evidence, was adequately covered by the standard jury instruction given, and is an issue better left for argument. We agree. The Gonzalezes presented no evidence showing that the vegetation created a reasonable buffer from the highway. In fact, evidence was presented that the vegetation located within the sewer easement parcel did not provide an effective barrier from highway noise because it was not "wide enough . . . not dense enough . . . [or] continuous." Although the Gonzalezes maintain that "Pima County's appraiser conceded it would be 'logical,' as the Gonzalezes had done, to screen or buffer their home from the interstate highway," he never stated that the vegetation on their parcel acted in such a capacity. Moreover, the trial court's instruction to the jury that, "in determining just compensation for severance damages, you may consider any factor which results in diminution of value if you find it has a present [e]ffect on fair market value of the property remaining" clearly permitted the jury to determine whether the vegetation acted as a buffer and what effect, if any, it might have had on the remaining parcel's market value.

### Admission of Evidence

¶ 14  The trial court has broad discretion in admitting evidence, and we will not disturb its decision absent clear abuse of discretion and prejudice. *Thompson v. Better-Bilt Aluminum Prod. Co.*, 187 Ariz. 121, 927 P.2d 781 (App.1996). The Gonzalezes maintain that the trial court improperly ad-

mitted testimony about their ability to connect to the sewer system once it was in place, arguing that it was evidence of special benefits Pima County had waived the right to elicit by failing to disclose and plead it in the pretrial statement. We disagree. Although the record is unclear as to whether the testimony established a general or special benefit,[1] we are not convinced that the testimony was evidence of a benefit. If it was, we conclude that it should be considered a general benefit because Pima County intended the sewer line to serve the general public, including developers, subdivisions, businesses and other individuals that have the ability to connect to it because of geographical proximity such as the Gonzalezes. *See Taylor v. State ex rel. Herman,* 12 Ariz.App. 27, 30, 467 P.2d 251, 254 (1970) (general benefit is "a benefit shared with other parcels in the community arising from the fulfillment of the public object which justified the taking.").

¶ 15  Taken in context, Pima County presented the evidence in response to the Gonzalezes' claim that their property's value would decrease because of the smell and insects that would result from the sewer line. Pima County rebutted this contention with evidence that there is very little chance the Gonzalezes would be affected by insects or smells, even if their house is connected to the sewer. Pima County merely negated the inference the Gonzalezes introduced.

¶ 16  The Gonzalezes further argue that Pima County "never laid the requisite foundation to distinguish the benefit from a general, non-deductible benefit," citing *Phoenix Title and Trust Co. v. State,* 5 Ariz.App. 246, 425 P.2d 434 (1967). Although the burden of establishing special benefits rested upon Pima County, *see Taylor,* we have not found, nor have the Gonzalezes established, a similar burden with respect to general benefits. Therefore, even if we were to find that the evidence showed a general benefit, we fail to see any error in its admission.[2]

1.  The trial court found that evidence on the Gonzalezes' ability to connect to the sewer line could be both general and special. Although we are unaware of any case that allows a benefit to be both, we will affirm a trial court's ruling if it is correct on any ground. *See Aguirre v. Robert*

*Forrest P.A.,* 186 Ariz. 393, 923 P.2d 859 (App. 1996).

2.  We note, however, that, had the testimony consisted of implications that connecting to the sewer line would have increased the property's val-

¶ 17 The Gonzalezes also argue that the trial court improperly admitted evidence that Pima County anticipated using the easement minimally once the sewer is constructed, basing their claim on the premise that " '[w]hen property is acquired by virtue of the power of eminent domain, the compensation of the owner is to be estimated by the actual legal rights acquired ... and not by the use that he may make of the right,' " *quoting Phoenix Title & Trust Co. v. Arizona Public Serv. Co.*, 8 Ariz.App. 221, 226, 445 P.2d 169, 174 (1968). Although Pima County told the jury, both during its opening statement and closing argument, that the Gonzalezes would be able to revegetate the easement area and that it was unlikely the county would constantly use the easement to maintain the sewer because of the long structural life of the sewer line, it also emphasized the absolute right of the county to access the line through the easement anytime in the future. Moreover, the trial court instructed the jury: "Pima County must pay the fair market value for all of the rights taken, even though it may not, immediately or ever, make full use of the rights taken. You must presume that Pima County will exercise its full right and use and enjoy the easement to the full extent permitted by law." The jury was properly instructed as to the potential of the county's future use of the easement and the jury's responsibility to award compensation for that use. We find no abuse of discretion in the trial court's admission of the evidence.

¶ 18 The judgment is affirmed.

DRUKE, C.J., and FLÓREZ, P.J., concur.