OPINION

FLÓREZ, J.
¶ 1 Appellant Lona Kelley sued appellee Dr. Joseph Abdo for medical malpractice and appellee Cobre Valley Community Hospital (CVCH) for negligent supervision and privileging after the breast reduction surgery Abdo performed on Kelley at CVCH led to Abdo removing both of Kelley’s breasts. Kelley raises eight issues on appeal, one of which we conclude requires us to reverse the judgment in favor of the defendants.
¶ 2 The following facts are not in dispute. After the breast reduction surgery, Kelley experienced complications that led Abdo to believe Kelley had developed necrotizing fas-ciitis in both breasts, a potentially fatal infection. Kelley was taken back to surgery and Abdo opened the incisions and removed all tissue he determined was necrotic — essentially all of her breast tissue. Later laboratory analysis, however, revealed no necrotizing infection.
¶ 3 One of the issues at trial was Kelley’s claimed emotional distress and its cause. On direct examination Kelley’s counsel asked her about her former husband. Kelley testified: “[I]n the beginning everything was wonderful, then he began to drink and the more time that passed, the more that he drank, to the point of the marriage being unbearable.” When Kelley’s counsel asked if “[t]he drinking cause[d] problems,” she responded: “I was taking my children to the Mormon Church and, ... his drinking just simply was a total embarrassment. Very difficult to have children in a religious setting with an alcoholic husband.” Neither defendant objected to Kelley’s comments. On cross-examination by CVCH the following transpired over Kelley’s objection:
Q ... You had mentioned yesterday about the Mormon religion. You recall that testimony?
A Yes, I do.
Q And I don’t mean in any way to criticize any religion, but have you changed or left the Mormon church?
A Yes. I lost my faith in God.
Q And you went to what faith, ma’am?
A The Wicca religion.
JUROR: We can’t hear.
[DEFENSE COUNSEL]: I’m sorry. Let me ask it again. They couldn’t hear what I said.
[DEFENSE COCOUNSEL]: Or her.
Q [DEFENSE COUNSEL]: Did you change from the Mormon religion and go to another one?
A Yes. I lost my faith in God.
Q What was the next religion you went to?
A Wicca.
Q Wicca. When did you change religions?
A I started investigating Wicca in 1998.
Q Okay. And could you tell us what Wicca is, please?
*513 A Wicca predates Christianity, and the main belief in the Wicca faith is do no harm.
Q And you actually took the Wicca pledge; is that correct?
A Correct.
Q For the court reporter, please, would you spell that Wicca?
A W-I-C-C-A.
Q There is a religion within Wicca called “paganism,” or is it one and the same?
A I believe that Wicca is referred to as a pagan religion because it — they do not believe — we do not believe in God.
Q I’m going to show you Exhibit Number 60, which is a record from — there’s a tab — Desert Samaritan Hospital. Do you see the tab?
A Yes, I do.
Q And this is dated January of 2000; correct?
A Correct.
Q And, again, and I’m just going to the place that says, “Belief system.” And it says, “Mother Earth, fire, rain, wind, reincarnation, pagan”?
A Correct, that’s what it says.
Q I just wasn’t sure that was accurate. And it was around this time, January of 2000, you changed religions; is that right?
A Yes, sir.
Q Well, in January, 2000, that was just after your husband left; is that correct?
A Yes, it is.
¶4 Kelley argues that the trial court abused its discretion in failing to sustain her objection to this testimony under Rules 402 and 403, Ariz. R. Evid., 17A A.R.S., and argues that the trial court’s failure to prohibit this questioning under article II, § 12 of the Arizona Constitution and Rule 610, Ariz. R. Evid., resulted in fundamental error. CVCH argues that Kelley waived any objection based on article II, § 12 and Rule 610 by failing to object on those grounds at the trial court. Abdo and CVCH both argue that this line of questioning did not violate article II, § 12 or Rule 610 because Kelley had opened the door to inquiry about her religious beliefs with her response to her own counsel’s question about her former husband’s drinking problem. Neither defendant addresses Kelley’s arguments under Rules 402 and 403. In its discussion of fundamental error under article II, § 12 and Rule 610, however, CVCH argues that the court’s admission of the testimony did not affect the jury or deprive Kelley of a fair trial.
Waiver
¶ 5 When a party objects to evidence on one ground and the trial court admits evidence over that objection, the objecting party waives objection on other grounds not raised. See State ex rel. Miller v. Tucson Assocs. Ltd. P’ship, 165 Ariz. 519, 799 P.2d 860 (App.1990); see also State v. Zuck, 134 Ariz. 509, 658 P.2d 162 (1982). In fact, Kelley argues that the trial court abused its discretion in overruling her Rule 402 and 403 objections, and committed fundamental error by not precluding the questioning under article II, § 12 and Rule 610. See State v. Gillies, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983) (“Failure to object to evidence, testimony or arguments waives these matters on appeal absent a finding of fundamental error.”) (emphasis added); see also State ex rel. Miller.
¶ 6 We may, however, consider the existence of these provisions and the policy behind them in assessing whether the trial court abused its discretion in overruling Kelley’s Rule 403 and relevancy objections, and whether Kelley was prejudiced thereby. See State v. Thomas, 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1981) (prohibitions against “injecting religious beliefs into a judicial proceeding ... rest on grounds of relevancy, possible prejudice and constitutional considerations”); see also State v. Trostle, 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997), quoting Walton v. Arizona, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511, 528 (1990), overruled on other grounds by Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (“ ‘Trial judges are presumed to know the law and to apply it in making their decisions.’”); see also State v. Warner, 159 Ariz. 46, 52, 764 P.2d 1105, 1111 (1988) (presuming that trial court knows and properly *514 applies rules of evidence). Because, as explained below, we find the trial court erred by failing to sustain Kelley’s Rule 403 and relevancy objections, we need not reach the issue of fundamental error in the civil context.
Opening the door
¶ 7 Kelley’s response to her counsel’s question about her former husband’s drinking did not open the door to the cross-examination that took place. Evidence may be admitted when “evidence adduced or comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal.” Pool v. Superior Court, 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984). Defendants argue that CVCH’s cross-examination of Kelley was necessary to correct the impression they say Kelley left with the jury that she was still part of the Mormon community. They assert that Kelley’s testimony was misleading because she was not a practicing Mormon at the time of trial, and that in a predominantly Mormon community like the one in which the trial took place, they believed that they would have suffered prejudice as a result of such a misapprehension.
¶ 8 First, Abdo and CVCH have grossly misstated Kelley’s testimony. Abdo asserts that Kelley “improperly [told] the jury that she maintained a religious, Mormon lifestyle,” and that she deliberately created an ambiguity in an “improper effort to enhance [her] credibility.” CVCH maintains that Kelley offered a “gratuitous statement that she was raising her children in the Mormon religion,” and “falsely implied] that she was still a Mormon.” The trial court did not find any deliberate attempt to mislead the jury, and the record reveals none. Kelley’s counsel had asked her what problems her former husband’s drinking had caused. Kelley simply answered truthfully that she had been taking her children to the Mormon Church and that her former husband’s drinking had been difficult and an embarrassment in that setting. Both Abdo and CVCH conceded at oral argument that Kelley’s statement included no false information. Kelley did not testify that she was currently taking her children to the Mormon Church, or that she maintained, or even had maintained, a religious Mormon lifestyle.
¶ 9 Second, we find unavailing Abdo’s claim that “[i]n fact, it was inappropriate for [Kelley] to raise the issue of her religious beliefs in direct examination, as [Kelley] was herself violating Arizona Rule of Evidence 610.” Not only did Abdo and CVCH fail to object to this testimony at trial, but Kelley’s answer to her counsel’s question appears to have been merely a statement of the hardships she had encountered in dealing with her former husband’s drinking. Cf. Mauldin v. Upjohn Co., 697 F.2d 644, 649 (5th Cir.1983) (plaintiffs testimony about belief in God and practice in attending church not violative of Rule 610, Fed.R.Evid., but simply evidence of hardships caused by medical condition).
¶ 10 But even if we were to accept for the sake of argument that Kelley’s testimony could have left the impression that she was a practicing Mormon at the time of trial and that that impression needed to be corrected, the cross-examination went well beyond what was arguably necessary. Not only did Kelley admit she had left the Mormon Church, but CVCH repeatedly elicited statements that Kelley had “lost her faith in God.” Kelley was also forced to testify that she had joined the Wiccan religion, taken the “Wiccan pledge,” and to explain the Wiccan belief system, including the fact that Wicca is characterized as a pagan religion. None of this was necessary to correct any feared impression that Kelley was a practicing Mormon at the time of trial. It was irrelevant and, therefore, inadmissible. See Ariz. R. Evid. 402 (“Evidence which is not relevant is not admissible.”); State v. Thomas, 130 Ariz. 432, 636 P.2d 1214 (1981); see also State v. Marvin, 124 Ariz. 555, 606 P.2d 406 (1980) (court properly excluded testimony concerning defendant’s religious beliefs).
Rule 403 weighing
¶ 11 Even if we were to assume, arguendo, that evidence of Kelley’s religious beliefs and affiliation were marginally relevant, Rule 403 provides for the exclusion of evidence when “its probative value is sub *515 stantially outweighed by the danger of unfair prejudice.” Any minimally probative value this evidence may have had was clearly outweighed by its prejudicial impact.
¶ 12 Article II, § 12 of our constitution provides that no person shall “be questioned touching his [or her] religious belief in any court of justice to affect the weight of his testimony.” Rule 610, Ariz. R. Evid., precludes the admission of “[e]vidence of the beliefs or opinions of a witness on matters of religion ... for the purpose of showing that by reason of their nature the witnesses] credibility is impaired or enhanced.” In Thomas, our supreme court determined that “Article II, § 12, and Rule 610 express a strong public policy against injecting religious beliefs into a judicial proceeding,” and that that policy is based in part on the potential prejudicial effect of doing so. 130 Ariz. at 436, 636 P.2d at 1218. In a criminal context, the court in Thomas found fundamental error in the trial court’s admission of evidence that the victim and her grandmother were “religious people.” Id. at 435, 636 P.2d at 1217. Although we do not reach the question in this case of fundamental error in a civil context, the ruling in Thomas recognizes the highly prejudicial nature of such evidence in general.[1] Obviously, the legislature and our courts have long considered such evidence at least potentially highly prejudicial.
¶ 13 The Kansas supreme court considered the prejudicial effect of a defendant being required to testify about her participation in Wicca. In State v. Leitner, 272 Kan. 398, 34 P.3d 42, 55 (2001) (citation omitted), the court explained:
As to the possible prejudice generated, the idea of witchcraft has generated terror and contempt throughout American history. Before this country was formed, the first laws of the Massachusetts Bay Colony listed idolatry and witchcraft among capital offenses. Even in our culture today, satanic imagery associated with witchcraft continues____ It seems evident that our culture associates witchcraft with Satanic worship and other evil practices. Any mention of a defendant’s involvement with witchcraft is highly prejudicial.
The trial court here erred by failing to find that the potential prejudicial effect of Kelley’s testimony did not substantially outweigh its arguable relevance.
Appearance of prejudice on the record
¶ 14 Next we must determine whether the trial court’s error in admitting the evidence of Kelley’s religious beliefs prejudiced her to such an extent that she is entitled to a new trial. We conclude that it did. Initially, we find it significant that Abdo and CVCH argued vehemently in the trial court and at oral argument in this court that they would have been seriously prejudiced had the jury in this case been allowed to believe that Kelley was Mormon. We find this argument incongruous with their assertion on appeal that Kelley’s testimony about leaving the Mormon Church, losing her faith in God, and joining a pagan religion, had no effect on the jury. Either Kelley’s religious affiliation would affect the jury or it would not. Defendants cannot logically argue that knowledge of that affiliation would affect the jury in order to support the introduction of testimony and then argue that the same evidence would not affect the jury in responding to Kelley’s appeal based on the introduction of that testimony.
¶ 15 The dissent relies on Callender v. Transpacific Hotel Corp., 179 Ariz. 557, 562, 880 P.2d 1103, 1108 (App.1993), for the principle that “the prejudicial nature of the error must affirmatively appear from the record,” and finds none appearing. We believe the dissent reads Callender too broadly, implying that the record must display some affirmative additional evidence that the prejudicial event actually caused the trier of fact to reach a different result. We read Callender to require no more than what it states: that the error’s prejudicial “nature” must appear in the record. And we conclude that the prejudicial nature of the court’s error in al *516 lowing Kelley to be cross-examined about her religious beliefs sufficiently appears in the questioning itself.
¶ 16 The error here was neither the admission of a single, isolated question nor a mere slip of the tongue. Rather, the transcript demonstrates a calculated attempt to focus the jurors’ attention on inflammatory information designed to play on their emotions. It constituted a significant portion of Kelley’s cross-examination. Defense counsel lingered on the topic as long as possible, asking gratuitous questions, feigning the need for clarification, repeating the word “Wicca” multiple times, even asking Kelley to spell it for the court reporter. Counsel emphasized a reference to Kelley’s belief system found in Kelley’s medical records, records that were eventually taken into the jury room as exhibits. He then read the reference aloud because he “just wasn’t sure [it] was accurate.”
¶ 17 The underlying context of Callender supports our interpretation of it. There, the appellant had argued that the appellee “might have gained an unfair advantage” by citing a memorandum decision to the trial court, and that the trial court had been “arguably influenced” by that memorandum decision to not give a negligence instruction to the jury. 179 Ariz. at 562, 880 P.2d at 1108. We found that the court properly had instructed the jury, and that “assuming ar-guendo a trial error occurred, [the appellant had] not [suffered] prejudice.” Id. But in the instant case, unlike the purported error in Callender, the record shows that the impact of the error undisputedly reached the jury. In Callender, the appellant asserted that the court had been improperly influenced by an improper citation; we assume a trial court considers only pertinent and proper information in making its determinations. See State v. Djerf, 191 Ariz. 583, ¶ 41, 959 P.2d 1274, 1286 (1998) (‘We presume the trial court disregards all inadmissible evidence in reaching a decision.”); cf. Hellyer v. Hellyer, 129 Ariz. 453, 456, 632 P.2d 263, 266 (App.1981) (“In a court trial we will not find error in the admission of evidence since it is presumed the judge will disregard inadmissible evidence in any event.”). But we cannot make the same assumption here, where the error directly reached the jury. In fact, unless otherwise instructed, the jury is obliged to consider all evidence presented, including here Kelley’s rejection of one faith in favor of another.
¶ 18 Moreover, our supreme court has held that “we cannot require a litigant to show the extent of prejudice resulting from an error when, as a practical matter, the nature of the error renders it impossible to prove the extent of any prejudice.” Perkins v. Komarnyckyj, 172 Ariz. 115, 119, 834 P.2d 1260, 1264 (1992); see also Perez ex rel. Perez v. Cmty. Hosp. of Chandler, Inc., 187 Ariz. 355, 360, 929 P.2d 1303, 1308 (1997) (litigant cannot be required to “assume an impossible burden”). The dissent asserts that Kelley faces no impossible burden here and provides examples of how prejudice could be shown beyond the prejudicial event itself. Although the dissent is correct that the presence or absence of additional events exacerbating the initial prejudicial event are relevant to our analysis, we decline to hold, as the dissent suggests we must, that such additional evidence of prejudice is necessary before a party may be granted relief from the initial prejudicial admission of improper evidence.
¶ 19 Indeed, two of the avenues the dissent suggests for showing additional prejudice are actually found in the record here. Defense counsel did draw the jury’s attention to witness testimony regarding the prejudicial topic by transparently lingering on that topic. And, defense counsel did draw the jury’s attention to an exhibit mentioning Kelley’s religious affiliation. We see no reason to disregard these events simply because they occurred in one coordinated, prolonged line of questioning.
¶ 20 The dissent correctly observes that the jury resolved the case on the question of liability and that the improper reference to Kelley’s religion had no relevance or connection to the question of Abdo’s or CVCH’s negligence. But while attorneys and courts are trained to distinguish between liability and damages, we decline to speculate that the jury so carefully separated its emotions regarding Kelley’s religious views from its analysis of the legal issues that would determine whether she would recover for her inju *517 ry. We believe that defense counsel’s questions were specifically designed to capitalize on tainting the jury’s perceptions of Kelley. We can only conclude that defense counsel would not have pursued such a strategy in view of the public policy undergirding and reflected in article II, § 12 of our constitution and Rule 610, unless he believed it might have an impact on the outcome of the case.
¶ 21 Moreover, our courts repeatedly have held that error in admitting evidence is reversible if the reviewing court is unable to conclude that the jury would have reached the same verdict without the testimony. See Perez; Davis v. Cessna Aircraft Corp., 182 Ariz. 26, 35, 893 P.2d 26, 35 (App.1994) (“The improper admission of evidence is reversible error if we are unable to conclude that the jury would have reached the same verdict without the evidence.”); see also Groener v. Briehl, 135 Ariz. 395, 661 P.2d 659 (App.1983).
¶ 22 In this case, we are unable to determine that the jury would have reached the same result without this evidence. We have not been provided the entire transcript of the proceedings, but the facts, as they have been stated to us, presented a close case. See Leitner, 34 P.3d at 56-57 (“in a close case, the admission of evidence of a defendant’s participation in Wicea might serve to inflame a jury ... and result in a reversal on appeal”). Because we have an incomplete transcript, the dissent would have us defer to the trial court’s “determinations” in its order denying the motion for new trial. But the trial court found no error in the admission of the testimony during trial. And nothing within its rejection of Kelley’s motion for new trial suggests that it ever even reached the question of whether any such error was prejudicial to the outcome of the case. Because our entire panel has rejected the trial court’s conclusion that the testimony should have been admitted and rejected the court’s conclusion under Rule 403, we are left with no additional “determination” to which we must defer. Additionally, we view the issue of prejudice in light of appellees’ counsels’ own repeated contention that the issue of religion might have been particularly influential in the community in which this case was tried. See Commonwealth v. Mimms, 477 Pa. 553, 385 A.2d 334, 336 (1978) (considering local “notoriety of the Muslim faith” in determining cross-examination on defendant’s Muslim affiliation not harmless error); see also Davis.
Conclusion
¶ 23 Because the trial court erred in allowing CVCH to cross-examine Kelley about her religious beliefs, and because we are unable to determine that the cross-examination did not affect the jury, we reverse the judgment in favor of defendants and remand for a new trial.
¶ 24 We note that Kelley requested that we rule on other issues presented on appeal even if we were to reverse on a single issue. We decline to do so. ‘“Because we have remanded this case for a new trial, we presume that a new discovery schedule will be established and that the parties will have the opportunity to complete any discovery they consider necessary. Therefore, we deem it unnecessary to decide the discovery issues presented on appeal.’ ” Englert v. Carondelet Health Network, 199 Ariz. 21, ¶ 25, 13 P.3d 763, 771 (App.2000), quoting Vincelette v. Metropolitan Life Ins. Co., 291 Mont. 261, 968 P.2d 275, 279 (1998). Likewise, other evidentiary issues urged on appeal and the court’s jury instructions may be affected by the evidence presented at the new trial. Therefore, we do not address any other issues raised in this appeal.
¶ 25 Reversed.
CONCURRING: PETER J. ECKERSTROM, Judge.

. The court's statement in Thomas that "strict adherence to the[] proscriptions [of art. II, § 12 and Rule 610] becomes even more compelling in the context of a criminal proceeding” presupposes the compelling nature of this type of testimony in the civil context. 130 Ariz. at 436, 636 P.2d at 1218 (emphasis added).