BRAMMER, Judge,
dissenting.
¶ 26 I agree with the majority that the trial court erred by allowing CVCH to continue questioning Kelley after it had established that she had changed her religious affiliation. At most, CVCH should have been allowed only to establish that Kelley was no longer associated with the Mormon Church. The ensuing questions about the nature of the Wicca faith exceeded the scope of what was necessary to correct any possible misimpressions within the jury and should not have *518 been permitted. The majority has also determined, however, that CYCH’s cross-examination of Kelley about her religious affiliation was so prejudicial that the evidence it produced cannot be considered harmless. I disagree. A thorough review of the available record does not establish that the error was so prejudicial that it warrants reversal.
¶ 27 To require reversal, the error must have been prejudicial to Kelley’s substantial rights, see Ariz. R. Evid. 103, 17A A.R.S.; Carter-Glogau Laboratories, Inc. v. Construction, Production & Maintenance Laborers’ Local 383, 153 Ariz. 351, 736 P.2d 1163 (App.1986), and, in addition, “the prejudicial nature of the error must affirmatively appear from the record.” Callender v. Transpacific Hotel Corp., 179 Ariz. 557, 562, 880 P.2d 1103, 1108 (App.1993). Such error will not be presumed. Walters v. First Fed. Sav. & Loan Ass’n of Phoenix, 131 Ariz. 321, 641 P.2d 235 (1982).
¶ 28 Preliminarily, a brief procedural comment seems appropriate. The majority notes, as do I, that the record on appeal does not contain “the entire transcript of the proceedings.” It was Kelley’s burden, as the appellant, to ensure that the record before us was adequate for our review of her claims of error. Ariz. R. Civ.App. P. 11(b)(1), 17B A.R.S. Furthermore, we will assume that those portions of the record that are missing support the trial court’s judgment. State ex rel. Dep’t of Econ. Sec. v. Burton, 205 Ariz. 27, 66 P.3d 70 (App.2003). Here, the trial court was required to review all it had heard and seen when it considered, and ultimately denied, Kelley’s motion for a new trial grounded, in part, on the very issue before us. This court will only set aside a trial court’s denial of a motion for a new trial if its order is unsupported by the evidence before it. See Larsen v. Decker, 196 Ariz. 239, 995 P.2d 281 (App.2000). And, we typically defer to a trial court’s determinations informed by its observations of what occurred at trial and its perception of a jury’s reaction, if any, to potentially inflammatory evidence that may have been erroneously admitted. See Birt v. Birt, 208 Ariz. 546, ¶ 9, 96 P.3d 544, 547 (App.2004), quoting City of Phoenix v. Geyler, 144 Ariz. 323, 328-29, 697 P.2d 1073, 1078-79 (1985) (“Our deference on review is based upon the trial court’s ‘more immediate grasp’ of the facts and superior ability ‘to assess the impact’ of what has occurred.”); see also Leo Joumagan Constr. Co. v. City Utils. of Springfield, Mo., 116 S.W.3d 711, 722 (Mo.Ct.App.2003) (“The trial court’s opportunity to appraise the impact of an argument on a jury is far superior to ours.”). Here, the available record supports no conclusion other than that reached by the trial court.
¶ 29 The trial court had before it Kelley’s motion for new trial, in which Kelley insisted she had been “greatly prejudiced” by the improper cross-examination about her religious beliefs, and her reply in support of that motion, in which she asserted the defendants had “know[n] how prejudicial this information would be,” repeatedly referring to the inherently prejudicial nature of the questioning. In addition, the trial court heard extensive oral argument on that motion, in which Kelley vehemently contended she had been deprived of a fair trial because of the “extremely prejudicial” questioning that “clearly crossed the line,” and which violated both constitutional and evidentiary protections. We may infer that the trial court’s ruling denying Kelley’s motion for a new trial encompassed all considerations relevant to its determination, see Elliott v. Elliott, 165 Ariz. 128, 796 P.2d 930 (App.1990), and that the court’s finding that no error occurred included an implicit determination that Kelley had suffered no prejudice. I will not assume, as does the majority, that the trial court, in ruling on Kelley’s motion for new trial, never “reached [and, inferentially, never decided] the question of whether [the] error was prejudicial,” especially when Kelley raised and argued that issue so specifically.
¶ 30 In addition, and perhaps most importantly, the principal issues at trial were whether Abdo had fallen below the standard of care in concluding that Kelley’s breast tissue and her accompanying physical symptoms indicated the presence of necrotizing fasciitis, and whether CVCH negligently had supervised and privileged Abdo’s actions. The testimony presented during this three-week trial necessarily related almost exclu *519 sively to those topics and, when contrasted to the brief mention of Kelley’s religion in the trial’s first week in response to eleven objectionable questions, overwhelmingly focused the jury’s attention on the defendants’ negligence, rather than on the irrelevant topic of Kelley’s religious beliefs. Rather than speculating as to what impact the erroneous cross-examination might have had on the jury, as the majority does in reaching its conclusion, I must presume, based on the available record, that the jury concentrated on the relevant task with which they were charged, and which they ultimately discharged: assessing Abdo’s and CVCH’s negligence.[2] See Walters (prejudicial nature of error will not be presumed). Kelley’s credibility was never an issue in the liability portion of this case. And, because the jury never addressed her emotional distress claim, having found the defendants not negligent in the first instance, her credibility was not a relevant issue during any aspect of the trial. Cf. State v. Carpenter, 141 Ariz. 29, 684 P.2d 910 (App.1984) (trial court properly granted new trial based on improper use of prior conviction for impeachment purposes; its use could not have constituted harmless error because defendant’s credibility was an important issue).
¶ 31 Furthermore, the issue of Kelley’s religion never surfaced again during the course of the three-week trial. No other witness testified on the subject of Kelley’s former or current religious beliefs, and the available record does not indicate that any counsel mentioned the topic during closing arguments to the jury. Combined with the indisputable fact that Kelley’s testimony was never controverted, and the jury, therefore, was not required to assess her credibility in that regard at any time during the trial, the complete absence of any other mention of or reference to Kelley’s religion during this lengthy proceeding requires me to conclude that the error was not prejudicial.
¶ 32 In addition, the cases the majority cites to support its standard for assessing whether erroneously admitted evidence is so prejudicial as to constitute reversible error relate to situations in which the error went to the core of the substantive issue at trial.[3] Such is not the case here, where the content of the erroneously admitted evidence relating to Kelley’s religion bore no substantive relation to the issues of Abdo’s and CVCH’s negligence. Because the erroneously permitted colloquy here represented an unrelated digression from the principal issue upon which the jury was required to focus, I am unconvinced that, absent the improper cross-examination, the jury instead would have reached a verdict in Kelley’s favor. CarterGlogau Labs., Inc. at 358, 736 P.2d at 1170 (test for determining whether improper admission of evidence constitutes reversible error is whether court is “convinced that absent the error, the jury would have reached a different verdict”).
¶ 33 Moreover, the prejudicial nature of the error we all agree occurred may not be presumed but must affirmatively appear from the record. Callender. Neither in her appeal brief nor during oral argument before this court did Kelley point to anything in the record suggesting or implying that the jury was ever called upon to assess her credibility, the only conceivable issue the erroneously admitted evidence could have prejudiced. Furthermore, the record neither establishes nor supports the inference that the evidence about Kelley’s religious beliefs in any way caused the jury to disregard the extensive trial testimony on the critical issues of Abdo’s and CVCH’s negligence so as to prevent Kelley from obtaining what the majority presumes otherwise might have been a ver- *520 diet in her favor. Cf. Short v. Riley, 150 Ariz. 583, 587, 724 P.2d 1252, 1256 (App.1986) (finding prejudicial questioning harmless because there was no “showing that the questions actually influenced the verdict”). The majority suggests that to apply the rule in Callender that error must appear affirmatively in the record would impose on Kelley an “impossible burden.” This creates an exception to the principle in Callender unwarranted by either logic or law. Moreover, had prejudice existed here Kelley could have affirmatively shown it by pointing to further comment by Abdo or CVCH on Kelley’s religious beliefs in closing arguments, or to jury questions about the subject, or instances in which counsel otherwise had drawn the jury’s attention to testimony or an exhibit mentioning Kelley’s religious affiliation. That none of those things occurred outside this objectionable, but exceedingly brief, cross-examination demonstrates that it is the majority that has the “impossible burden” — that of supporting its conclusion that actual prejudice occurred. Indeed, for the majority to circuitously reason that prejudice exists here and may be seen simply from the appearance of the “questioning itself’ merely begs the question.
¶ 34 The majority’s assessment that this was “a close case,” and its conclusion that the jury might have reached a different result absent the improper questioning, is the result of speculation that is unsupported by the record. And State v. Leitner, 272 Kan. 398, 34 P.3d 42 (2001), on which the majority relies, supports instead my conclusion that the error here was indeed harmless. The supreme court in Leitner ultimately found that, although the trial court should not have permitted testimony of the defendant’s involvement with witchcraft because of the subject’s “highly prejudicial” nature, “the jury [had] heard ample evidence” supporting the defendant’s guilt, and, accordingly, affirmed the conviction.[4] 34 P.3d at 55, 57. The same reasoning follows here for two reasons: the determinative issue on which the jury was focused was not Kelley’s credibility but whether Abdo and CVCH had been negligent; and the absence of any further mention of or reference to Kelley’s religion in any other part of this lengthy trial.
¶ 35 Thus, I respectfully part company with my colleagues and am forced to conclude that the trial court’s error in allowing the cross-examination here was harmless, and would, accordingly, affirm the judgment in favor of the defendants. See Foulk v. Kotz, 138 Ariz. 159, 673 P.2d 799 (App.1983) (trial court’s ruling on objection to admission of evidence subject to harmless error review).

. Indeed, the only questions posed by the jury focused exclusively on the negligence issues, and nowhere suggest any interest in Kelley's religious beliefs.

. Perez ex rel. Perez v. Cmty. Hosp. of Chandler, Inc., 187 Ariz. 355, 929 P.2d 1303 (1997) (finding bailiff's three occasions of substantively incorrect, improper ex parte communications with deliberating jury prejudicial); Davis v. Cessna Aircraft Corp., 182 Ariz. 26, 893 P.2d 26 (App.1994) (trial court in wrongful death action premised on product liability erroneously allowed into evidence governmental agency report concluding pilot error probable cause of aircraft accident); Groener v. Briehl, 135 Ariz. 395, 661 P.2d 659 (App.1983) (trial court in personal injury action erroneously allowed eyewitness’s testimony that automobile striking four-year-old pedestrian was unavoidable).

, That court also emphasized that "there is no per se barrier to the introduction of evidence of a person's membership or participation in a religious group or association.” Leitner, 34 P.3d at 55, and that each case should be decided with reference to its particular facts.